Allen, J.
 

 The controlling question in this case is whether a village in the state of Ohio has the power, through its board of trustees of public affairs, to contract with an insurance company to insure itself against liability to members of the public on account of injuries or deaths caused by the maintenance and operation of a municipal electric light and power plant and lines. The particular policies of insurance issued constituted an agreement on behalf of the Travelers Insurance Company to indemnify the village of Wadsworth against loss by reason of liability imposed upon it for damages on account of injuries or deaths resulting to persons other than those employed by the village. The policies further provided that in case of action against the village the defense should be conducted by the insurance company, and that the village should defend such suits only upon being given written authority by the insurance company. The insurance covered “electric light and power operation, maintenance, extension of lines, and making of service connections, said
 
 *442
 
 business being located on tbe south side of Broad street in said village,” and applied to “injuries other than at the plant if caused by drivers or other helpers engaged at the time in the service of the village in connection with operating the said business and covering liability for one or more persons injured up to $10,000.” The premium was based upon the pay roll.
 

 The petition included the following averment:
 

 “Plaintiff further says that said contract of insurance was deemed by said board of trustees of public affairs and was necessary for the safe, economical and efficient management and protection of said works, plants, and public utilities, which were during all of said times owned by said village, that said board made said contract in anticipation of revenues to be derived from the operation thereof, and that in said transaction defendant acted in its corporate, proprietary, and ministerial capacities, namely, the operation and management of an enterprise and industry formerly carried on by private citizens and not by the government or its subdivisions. Plaintiff further says that said light and power plant was then and has ever since been owned, maintained, and operated by said village, both for lighting the streets of said village and for distribution of light and power to private consumers, and included the maintenance and operation of wires carrying electric current of high voltage, poles, engine, dynamo, boiler, and vehicles, and that bodily injuries to and death of members of the public are possible therefrom.”
 

 The provisions of the Constitution and the stat
 
 *443
 
 lites under which the case arises are the following: Constitution, Article XVIII, Section 4:
 

 “Any municipality may acquire, construct, own, lease and operate within or without its corporate limits, any public utility the products or service of which is or is to be supplied to the municipality or its inhabitants, and may contract with others for any such product or service. The acquisition of any such public utility may be by condemnation or otherwise, and a municipality may acquire thereby the use of, or full title to, the property and franchise of any company or person supplying to the municipality or its inhabitants the service or product of any such utility.”
 

 General Code, Section 3616:
 

 “All municipal corporations shall have the general powers mentioned in this chapter, and council may provide by ordinance or resolution for the exercise and enforcement of them.”
 

 These provisions include the power “to establish, maintain and operate municipal lighting, power and heating plants, and to furnish the municipality and the inhabitants thereof with light, power and heat,
 
 to procure everything necessary therefor,
 
 and to acquire by purchase, lease or otherwise, the necessary lands for such purposes, within and without the municipality,” General Code, Section 3618.
 

 When a village owns and operates an electric light plant, or similar public utility, under General Code, Section 4357, the council establishes a board of trustees of public affairs to manage the same. The powers of the board are as follows: General Code, Section 4361:
 

 “The board of trustees of public affairs shall
 
 *444
 

 manage, conduct and control
 
 the waterworks, electric light plants, artificial or natural gas plants, or other similar public utilities, furnish supplies of water, electricity or gas, collect all water, electrical and gas rents, and appoint necessary officers, employees and agents. The board of trustees of public affairs may make such by-laws and regulations
 
 as it may deem necessary for the safe, economical and efficient management and protection of such works, plants and public utilities.
 
 Such by-laws and regulations when not repugnant to the ordinances, to the Constitution or to the laws of the state, shall have the same validity as ordinances. * * *
 
 The board of trustees of public affairs shall have the same powers and perform the same duties as are possessed by, aAid are incumbent upon, the director of public service
 
 as provided in Sections 3955, 3959, 3960, 3961, 3964, 3965, 3974, 3981, 4328, 4329, 4330, 4331, 4332, 4333 and 4334 of the General Code, and all powers and duties relating to waterworks in any of these sections shall extend to and include electric light, power and gas plants and such other similar public utilities, and such boards shall have such other duties as may be prescribed by law or ordinance not inconsistent herewith.”
 

 Among the powers possessed by the director of public service of a city, and thus given by reference to the board of trustees of public affairs of a village, in the management of electric light works, are the following:
 

 General Code, Section 3961:
 

 “Subject to the provisions of this title, the director of public service
 
 may make contracts
 
 for
 
 *445
 
 the building of machinery, waterworks buildings, reservoirs and the enlargement and repair thereof, the manufacture and laying down of pipe, the furnishing and supplying with connections all necessary fire hydrants for fire department purposes, keeping them in repair, and
 
 for all other purposes necessary to the full and efficient management and construction of waterworks
 

 Under Section 4361, above quoted, the board of trustees of a village is given the same powers in managing an electric light plant as the director of public service of a city has in managing a waterworks, and under Section 3961 the director of public service of a city in managing a waterworks is authorized to make contracts for building, enlargement, and repair of the machinery and buildings under his supervision and “for all other purposes necessary to the full and efficient management and construction of waterworks.”
 

 The case arises on demurrer to the petition. Any question of fact, therefore, is eliminated. No bad faith, no abuse of discretion, is alleged on the part of the board of trustees of public affairs of the village. The single important question before us is whether the board of trustees of public affairs of Wadsworth was authorized to enter into a contract of liability insurance of the nature described.
 

 Upon the pleadings, defendant in error has admitted that the securing of this insurance was necessary to the full and efficient management of the works. Therefore, under Section 4361 and Section 3961, the trustees had power to make these contracts, for they are authorized to make con
 
 *446
 
 tracts “for all other purposes necessary to the full and efficient management” of the electric-light and power plant.
 

 We are not, however, disposed to place our holding upon such narrow ground. The defendant in error claims, and the Court of Appeals held, that liability insurance is not necessary to the full and efficient management of the plant.' Their view is apparently that the financial calamity which a small municipal business might incur if it were subject to a large judgment, due to the carelessness of one of its employes, would not destroy the physical side of the business, and that protection from such possible danger is not necessary to the full and efficient management of the business. We are unable to reconcile this view with the state of the pleadings, but, rather than decide this • case upon a technicality, we shall proceed to discuss the power of the village from a larger viewpoint.
 

 The court is of the opinion that the board of trustees had such power for the following reasons:
 

 First: Because under the Constitution and general law the village was acting in a proprietary capacity in running the electric power and light plant, and hence the board of trustees was empowered to act with regard to the plant as a private business man would act in the conduct of his business.
 

 Second: Because Section 4361 expressly authorizes the protection, not merely of the plant and the works, but of the public utility.
 

 That the municipality in operating an electric light plant is functioning through its proprietary powers, and that in the management of such a
 
 *447
 
 plant municipal officers are vested with broad discretion and authority, is established in this state.
 
 Butler
 
 v.
 
 Karb,
 
 96 Ohio St., 472, 117 N. E., 953, the first paragraph of the syllabus of which case reads:
 

 “Municipalities of the state are authorized to establish, maintain and operate lighting, power and heating plants and furnish the municipality and the inhabitants thereof light, power and heat. The powers thus conferred are proprietary in their character and in the management and operation of such plant municipal officials are permitted wide discretion. ”
 

 Since the village is acting in a proprietary capacity in running the plant, the question next arises how it may exercise these proprietary powers. Under the Ohio statutes a municipality is nowhere prohibited from taking out liability insurance, so that any prohibition against making such a contract through its- properly authorized officers must be inferred from the statutes above given, or from the nature of the power exercised. With regard to the exercise of proprietary powers the rule is that when exercising those powers the municipality may act as would an individual or private corporation. This is the general rule upon the subject.
 

 When a municipality is engaged in operating a municipal plant, under an authority granted by the general law, it acts in a business capacity, and stands upon the same footing as a private individual or business corporation similarly situated. Pond, Public Utilities, Section 11; 4 McQuillin on Municipal Corporations, Section 1801; 3 Dillon on
 
 *448
 
 Municipal Corporations (5th Ed.), Section 1303;
 
 Helena Consol. Water Co.
 
 v.
 
 Steele,
 
 20 Mont., 1, 49 Pac., 382, 37 L. R. A., 412;
 
 Henderson
 
 v.
 
 Young,
 
 119 Ky., 224, 83 S. W., 583;
 
 Omaha Water Co.
 
 v.
 
 Omaha,
 
 147 Fed., 1, 77 C. C. A., 267, 12 L. R. A. (N. S.), 736, 8 Ann. Cas., 614;
 
 Davoust
 
 v.
 
 City of Alameda,
 
 149 Cal., 69, 84 Pac., 760, 5 L. R. A. (N. S.), 536, 9 Ann. Cas., 847, 20 Am. Neg. Rep., 7;
 
 Western Sav. Fund Soc.
 
 v.
 
 City of Philadelphia,
 
 31 Pa., 175, 72 Am. Dec., 730;
 
 Indianapolis
 
 v.
 
 Indianapolis (Gaslight & Coke Co.,
 
 66 Ind., 396.
 

 This position is supported by the weight of authority. In
 
 Brumm
 
 v.
 
 Pottsville Water Co.,
 
 9 Sad. (Pa.), 483, 12 Atl., 855, the Supreme Court of Pennsylvania says:
 

 “In separating the two powers, public and private, regard must be had to the object of the Legislature in conferring them. If granted for public purposes, exclusively, they belong to the corporate body in its public, political or municipal character. But if the grant was for purposes of private advantages and emolument, although the public may derive a common benefit therefrom, the corporation
 
 quoad hoc
 
 is to be regarded as a private company. It stands upon the same footing as would any individual or body of persons, upon whom the like special franchises had been conferred.”
 

 To the same general effect are
 
 Illinois Trust & Savings Bank
 
 v.
 
 City of Arkansas City,
 
 76 Fed., 271, 22 C. C. A., 171, 34 L. R. A., 518;
 
 Southern Bell Telephone & Telegraph Co.
 
 v.
 
 Mobile
 
 (C. C.), 162 Fed., 523;
 
 City of Winona
 
 v.
 
 Botzet,
 
 169 Fed., 321, 94 C. C. A., 563, 23 L. R. A. (N.S.),
 
 *449
 
 204; and
 
 Muncie Natural Gas Co.
 
 v.
 
 Muncie,
 
 160 Ind., 97, 66 N. E., 436, 60 L. R. A., 822.
 

 In
 
 Andrews
 
 v.
 
 City of South Haven,
 
 187 Mich., 294, 153 N. W., 827, L. R. A., 1916A, 908, Ann. Cas., 1918B, 100, the court held that it would not interfere “with any reasonable exercise of the implied powers to operate such plants in a business way and as any private corporation could or would.”
 

 See, also,
 
 Fretz
 
 v.
 
 City of Edmond,
 
 66 Okl., 262, 168 Pac., 800, L. R. A., 1918C, 405, the second paragraph of the syllabus of which reads:
 

 “Municipal corporations in operating a water plant exercise business and administrative functions, rather than those strictly governmental in their nature, and in the exercise of such functions are governed largely by the same rules applicable to individuals or private corporations engaged in the same business.”
 

 Would a private business man take out liability insurance upon such a business as- this Wadsworth utility? Such insurance is often written upon business operated by individuals and by private corporations, and making contracts therefor is generally considered to be the act of a prudent business man.
 

 Under the ruling of the
 
 Karb case, supra,
 
 and the reasoning of the above cases, the village was authorized to contract for the policies. Moreover, we hold that authority to make such contracts is expressly given the village in the general law.
 

 Section 4361, General Code, authorizes the municipal officials to protect works, plants, and public utilities.
 

 
 *450
 
 What is the meaning of the words “public utilities” in this part of the section? The “works and plants” evidently refer to the physical equipment. Bo the words “public utilities” also mean the physical equipment? What authority is given in the power to protect “public utilities” as well as “works and plants”? Is authority given only to protect the physical equipment of the public utility? It would seem futile for the Legislature to duplicate its terms to such a degree, if “public utility” in this connection means nothing more than the plant itself and “protection to the public utility” means nothing more than physical protection to the plant.
 

 In the statute there is no definition of a public utility owned by a municipality. Section 614-2, General Code.
 

 Looking to the Constitution, we find that any municipality “may acquire, construct, own, lease and operate within or without its corporate limits, any public utility the
 
 products or service
 
 of which is or is to be supplied to the municipality or its inhabitants. * * *” Article XVIII, Section 4.
 

 This section shows plainly that the term “public utility” has a broader meaning than that of mere physical equipment. We do not speak of the “products or service” of a plant. We speak of the “products or service” of the administration of the plant — of the business located in the plant. Hence Article XVIII, Section 4, authorizes a municipality not merely to acquire or construct, or lease, own, or operate a plant, but it also authorizes it to acquire, construct, own, lease, and operate the plant and business of a kind defined in Section 614-2; that is to say, under the Constitution the term
 
 *451
 
 “public utility,” as operated by a municipality, refers to tbe entire business, including both the plant and its operation.
 

 Under this construction of the words “public utility,” and under Section 4361, General Code, even if the contract of liability was not authorized for the efficient management of the plant, it was authorized for the protection of the public utility itself. If a judgment for $10,000 were obtained against a village like Wadsworth, the operation of the electric light and power plant might be seriously curtailed because of the diversion to the payment of the judgment of funds otherwise applicable to the work of the plant. What reasonable distinction can be drawn, so far as economy is concerned, between the loss sustained by a municipality through the payment of damages to a person injured in the operation of an electric light plant and a loss sustained by the municipality if the same plant is burned? What reasonable distinction, from the standpoint of economy, can be drawn between fire and liability insurance? Damage from both forms of misfortune very often occurs. In one form of insurance protection to the works is given; in the other, protection to the utility itself, including the business. In each case, procuring insurance appears a wise means of protection against such loss. 'Such protection would be exercised by an ordinary business man.
 

 It has been expressly held that the power to maintain a public building includes the power to contract for fire insurance.
 
 French
 
 v.
 
 City of Millville,
 
 66 N. J. Law, 392, 49 Atl., 465, referred to in
 
 French
 
 v.
 
 City of Millville,
 
 67 N. J. Law, 349,
 
 *452
 
 51 Atl., 1109. In this case a judgment was rendered against the city on notes given for fire insurance premiums. The court said:
 

 “The city charter * * * empowers the city to erect and maintain a city hall, schoolhouses, and such other public buildings as may be necessary in the city. As incidental to the power thus granted, the city acquired the right to contract for indemnity against loss by the burning of such building.”
 

 There being no practical distinction in protecting a business from loss by fire and from loss by liability, we consider this case an authority in favor of the power of the village to make the contract.
 

 The defendant in error claims, however, that the petition is fatally defective because it does not aver that Section 3806, General Code, was complied with, and that the clerk’s certificate that the money required to meet the premiums was in the treasury had been filed before the contracts of insurance were made. However, Section 3806 applies only where payment is to be made from money raised by taxation.
 
 Kerr
 
 v.
 
 City of Bellefontaine,
 
 59 Ohio St., 446, 52 N. E., 1024. As the petition alleges and the demurrer admits that the board made the said contracts in anticipation of revenues to be derived from the operation of the electric light plant, this objection is untenable.
 

 Defendant in error also urges that, even if the village had the power to carry this insurance, the contracts should have been entered into by the
 
 *453
 
 council. The board of trustees of public affairs is authorized to make contracts to the same extent as the director of public service of a city, and within the provisions of Section 4328, General Code, a contract for less than $500 may be made by the director of public service without the action of council. The record shows that each of the two premiums sued upon is for less than $500; hence this objection also is overruled.
 

 Finally, defendant in error claims that the village of Wadsworth had no power to enter into this insurance contract because the policies provided that the insurance company should furnish the defense in case suit was brought to recover for personal injuries. Both of the policies sued upon do provide that .the village cannot defend suits brought against itself without written permission from the insurance company. Under our Constitution and statutes the validity of such a provision is indeed questionable. However, the contention as to this provision of the policy is moot, because of the fact that no loss nor injury was sustained by the village of Wadsworth during the period that the policies were in force. No accident occurred, and the Travelers Insurance Company did not defend any proceedings brought against the village. The question as to this provision of the policy, therefore, is not before us, and we do not decide that question.
 

 Coverage was given to the village of Wadsworth for the period in question under the policies sued upon. The village received the protection, and had the power to make the contracts under which the coverage was given.
 

 
 *454
 
 For this reason the judgment of the Court of Appeals is reversed.
 

 Judgment reversed.
 

 Marshall, C. J., Jones, Matthias and Day, JJ., concur.
 

 Robinson, J., took no part in the consideration or decision of the case.