**CITY OF EL PASO, Texas, Appellant,**

v.

**Bill NICHOLSON, Appellee.**

No. 5547.

Court of Civil Appeals of Texas.

El Paso.

Oct. 3, 1962.

Rehearing Denied Oct. 31, 1962.

Travis White, City Atty., Robert J. Galvan, John C. Ross, Jr., Asst. City Attys., El Paso, for appellant.

Holvey Williams, Daniel Garbern, El Paso, for appellee.

FRASER, Justice.

This is an appeal from a judgment recovered by appellee (plaintiff) against the City of El Paso for a sum of money which had been held by appellant (defendant). The money was taken from one Bob Huff by police officers during the process of a gambling raid, but plaintiff maintains that the money was actually his. The basis of this controversy or lawsuit seems to depend on the terms and interpretation of Section 71 of the El Paso City Charter which, among other things, says:

"The City Council shall have the management and control of the finances and property, real, personal and mixed, belonging to the City; provided, that *no suit of any nature whatever* shall be instituted or maintained against the City of El Paso unless the plaintiff therein shall aver and prove that previous to the filing of his original petition he applied to the City Council for redress, satisfaction, compensation or relief, as the case may be, and that the same was by the City Council refused". (Emphasis ours)

In this appeal appellant does not maintain that the money was lawfully or rightfully seized, but appears to base its entire defense on its position that appellee did not comply with the provisions of said Section 71 of the City Charter, in trying to recover his money.

It is obvious from the record that the appellant did not produce sufficient evidence to warrant the forfeiture of the money here involved, amounting to $2440.00.

The gambling raid was made at a residence on January 6, 1958. Approximately a year and eight months later—to-wit, August 26, 1959—Nicholson, as plaintiff, filed his original petition asking the return of this sum of money. He alleges that he had handed the money to one Huff; that it consisted of five dollar bills contained in a canvas bag; that Huff put it inside of his shirt and went to sleep on a couch in the living room while he (Nicholson) was engaged in what he called a small-stake poker game in the kitchen. During the raid, plaintiff alleges, the money was taken from Huff. After the filing of this petition on August 26, 1959, the defendant on September 17, 1959 filed its plea in abatement and first original answer, comprising a general denial, and setting up plaintiff's failure to apply to the City Council for redress, satisfaction, compensation or relief, as provided in said Section 71. Thereafter, on March 14, 1960 plaintiff did make such application to the City Council for redress, satisfaction, compensation or relief, leaving his original petition still pending before the trial court. Then, on March 24, 1960 the City Council denied plaintiff's application. Thereafter, on April 20, 1960 plaintiff filed his first amended original petition and then, on January 20, 1961, filed his second amended original petition. It was on this petition that he went to trial, the first or original petition remaining on file and not dismissed.

On the trial of the case the district court awarded judgment to the appellee for $2440.-00 plus six per cent interest from the date the same was seized from the possession of plaintiff (or Huff), and with interest on such judgment from the date of same at the rate of six per cent.

Appellant, as stated above, bases its appeal on the contention that appellee went to trial on his second amended original petition without having dismissed the original petition which had been filed before any application for redress, etc., had been filed with the City, in accordance with the terms of Section 71 of the City Charter. The appellant points out that the Charter provision says that no suit shall be instituted or maintained unless the plaintiff shall have averred and proven that, previous to the filing of his original petition, he made the above described application.

We do not believe appellant's point is good, for two reasons. First, as pointed out by Justice Higgins of this court,

in El Paso Union Passenger Depot Co. v. Look, Tex.Civ.App., 201 S.W. 714—

"It [charter provision] was manifestly mainly intended to protect the city against the instigation of suits upon pecuniary demands until it had been afforded an opportunity to investigate and amicably adjust the same."

Justice Higgins says further:

" * * * is to be regarded as in aid of the management and control of the city's finances and property, vested in the council * * *."

We think these words by Justice Higgins fairly and properly interpret the intent and meaning of the section here involved. It appears to us that here the provisions of this section were substantially complied with. The application was presented to the City Council; they did have a chance to investigate and amicably adjust the same, which they declined to do. Plaintiff then went ahead with his lawsuit. This leaves the appellant resting its entire case on the contention that plaintiff filed his first original petition, failed to dismiss it, then went ahead and filed his application for redress or settlement; and, after it was refused, filed an amended petition upon which this case was eventually tried. We fail to see where any harm did or could have resulted to the City of El Paso. Of course one real and underlying reason for the plaintiff's procedure is that the statute of limitation was running against him, and as far as we can tell from the record, would have intervened between the date of the filing of the first petition and the second amended original petition. It might be noted, too, that plaintiff describes his petition upon which he went to trial as his second amended *original* petition. Section 71 merely says that the application must be filed before the filing of the original petition. Here such was done before the filing of his second amended *original* petition. Without going any farther into the legal ramifications of this matter, we believe and hold that for the reasons above stated this

section of the City Charter was substantially complied with by plaintiff, as he did go to trial on his second amended original petition after his application had been presented and turned down by the City Council. We consider this substantial compliance with the provisions of the City Charter that are here applicable.

■ However, if we be wrong, we further feel and hold that this provision does not apply or affect this particular transaction. It is immediately apparent that here the plaintiff asks to take nothing from the City except that which the City took from him—to-wit, a sum of money. He does not ask for any City property or any City money or anything belonging to the City. This is particularly important when viewed against the logic of the quotation from the opinion of Justice Higgins, hereinabove set forth. This is not a damage suit. The City does not claim the money rightfully belongs to it, nor are there any damages awarded. To hold otherwise would be to say that a city with the governmental powers and responsibilities possessed by the City of El Paso could, through its agents or officers, without proper legal authority, take possession of someone's money or property and successfully retain it unless the aggrieved individual should comply, with technical perfection, with the City's own regulations as to how he may regain his wrongfully taken property. We do not believe this to be the object or intent of the Charter provision here involved.

Appellee points out that there are other exceptions to this type of provision, such as injunctions, and quotes from other jurisdictions where it is held that causes of action based on equitable principles for money had and received, need not be predicated on charter provisions of a nature similar to those of the City of El Paso. Also, appellee points out—we think with considerable justification—that under Article I, Section 19 of the Texas Constitution, Vernon's Ann.St., "No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner

disfranchised, except by the due course of the law of the land." He also quotes from McQuillin Municipal Corporations (3rd Ed.), Sections 19.11 and 19.19, which discuss the Fourteenth Amendment to the United States Constitution, and states that the purpose of the Amendment is as follows:

"* * * to protect every citizen in his personal and property rights against the arbitrary action of any person or authority."

And in Section 19.19 this text says:

"To take private property without compensation, except where it does so under a valid exercise of the police or other sovereign power, constitutes a deprivation of property without due process of law within the meaning of the 14th Amendment."

Here, of course, it is not controverted that this money was illegally taken. We hold, under the circumstances, that where such has been done without adequate legal justification, and retained by the taker, to-wit, the appellant, the appellee has his cause of action in the courts and need not, in pursuing same, be compelled to comply with the provisions of the City Charter of appellant. In other words, he has full recourse to the proper court, and these provisions of the City Charter are not a condition precedent thereto. As pointed out above, this is not an attempt to sue the City for damages or take anything from the City that ever belonged to the City, but is merely an attempt to recover that which rightfully belonged to appellee and which came into the City's possession in an illegal and wrongful manner, and certainly not by any process of eminent domain. Lastly, appellee points out that Article 638 of the Vernon's Ann. Penal Code of the State of Texas states as follows:

"Any person having interest in or entitled to possession of any property so seized shall have the right at any time before the destruction of such property,

as in ordinary civil cases, to try the issue of whether or not such property is a gaming table, or bank or device or was used as equipment or paraphernalia of any gambling house and to recover the possession of the same, and to maintain any other character of suit not inconsistent with this law * * *."

This statute follows Articles 636 and 637, which provide the procedure necessary for officers to follow when they attempt to confiscate or destroy property alleged to be involved in gambling. Appellant's first point is therefore overruled.

Appellant's second point complains of the court's action in allowing interest. Although this point is worded in the appellant's brief that the court erred in allowing the "judgment" to bear interest at the rate of six per cent per annum, we shall treat it as though appellant meant that the court erred in allowing any interest at all. We do think that the court erred in allowing interest from the date of the raid—to-wit, January 6, 1958—to the date of January 16, 1958, at which time the money was taken from the police officers by a City alderman and turned over to the City comptroller and deposited by him in the General Fund, in the Miscellaneous Revenue Account. Up until the money was taken from the police, it was a police action and it had not been determined in any way that the money had illegally been taken; but on January 16th the City of El Paso received this money and put it to use, apparently, as it was put into the General Fund. We think interest, therefore, is proper and allowable, not as a punitive measure, but merely because the City had the use of this sum of money by virtue of the action of the alderman. As to the judgment bearing interest, this is provided for by statute. We feel that appellee was not entitled to interest for the ten-day period from January 6 to January 16, 1958 because, during that time, this money was in the possession of the police department as the result of a gambling raid which is a police function. Interest was not properly allowable in this case until the money came

into the possession and use of the City by the action of the alderman, as set forth above. Therefore, the judgment must be reformed to eliminate this sum. With this modification appellant's second point is overruled.

The judgment of the trial court shall be reformed so as to exclude and eliminate interest on the sum of $2440.00 from January 6, 1958 to January 16, 1958. As reformed, the judgment of the trial court is in all things affirmed.