JOSEPH S. GRAMS AND ANOTHER v.
INDEPENDENT SCHOOL DISTRICT NO. 742
AND OTHERS.

176 N. W. (2d) 536.

April 10, 1970—No. 41919.

*Thomas J. Murphy* and *Hughes, Hughes & Hughes,* for appellant.

*Donohue & Donohue,* for respondent.

Heard before Knutson, C. J., and Nelson, Otis, Sheran, and Theodore B. Knudson, JJ.

THEODORE B. KNUDSON, JUSTICE.*

Appeal by plaintiffs from an order granting a motion for summary judgment in favor of defendant Independent School District No. 742, a municipal corporation of Minnesota, and denying a motion for summary judgment made by plaintiffs

---

*Acting as Justice of the Supreme Court by appointment pursuant to Minn. Const. art. 6, § 2, and Minn. St. 2.724, subd. 2.

against said defendant and from the judgment entered pursuant to such order dismissing plaintiffs' complaint as to said defendant.

Plaintiff Stephen Grams was injured while wrestling during a physical education class at the Technical High School in St. Cloud on February 19, 1968. He suffered a broken neck and injury to his spinal cord, resulting in apparent total and permanent disability of his limbs. Stephen and his father, Joseph S. Grams (hereinafter referred to as Grams), brought timely suit against defendant school district, alleging that defendants negligently failed to instruct and prepare Stephen for the dangers of wrestling and that defendants failed to provide adequate equipment and supervision.

On February 27, 1968, Grams signed a form, hereinafter referred to as a notice, which was prepared by school personnel (apparently in part by codefendants) at the executive offices of the school district, blank spaces therein having been filled in by persons other than Grams, who signed it as parent. The school district was a member of the Minnesota State High School League, which provided very limited coverage for expenses incurred incident to injuries under a group accident benefit plan. In consideration of the payment of some amount by the students and their parents, students incurring injuries were compensated according to a fixed schedule. The school assigned Miss Judy Notsch of the administrative office as benefit plan administrator and took pains to see that the parents of a child injured would be notified of their limited rights under the group policy so that claims could be made within 30 days of the accident. There was no comparable procedure provided by the board of education to process notices and loss claims for injuries resulting from negligence on the part of the school district under Minn. St. c. 466, although the board had provided insurance coverage in case of loss under the provisions of that chapter. Grams signed the form at the school district offices after he had a conversation about the claim for his 15-year-old son's injury with Curtis Mogck,

Judy Notsch, and other school personnel. Mogck was one of three administrative officers of the school district and the principal administrative officer on duty and then in charge for the school district. Mogck was director of business services. His duties included, in addition to business operations, the procurement of liability insurance, assistance in the preparation of the board's agenda with Mr. James K. Mitchie, superintendent, and Mr. Kermit L. Eastman, assistant superintendent, which was known as "Superintendent's Report to the Board," and attendance at board meetings. The reports are distributed to board members about 2 days in advance of the monthly board meetings. The school district is a large one with administrative offices centralized in a building adjoining the Technical High School. The board has a clerk but clerical functions are delegated to an administrative employee. In the report for the first meeting of the board after the accident, held on March 21, 1968, the following appeared as an agenda item or report:

"REPORT OF SERIOUS ACCIDENT ON FEBRUARY 19, 1968

"A tenth grade student at Technical High School, Stephen Grams, was seriously injured in a physical education class on February 19, 1968. The accident occurred on the wrestling mats in the gymnasium. Three physical education instructors were present, supervising the wrestling unit. Stephen was wrestling with a boy who was lighter in weight, and while the accident was of a freakish nature, Stephen Grams is still in a partially paralyzed condition at the University of Minnesota Hospital. Stephen is the son of Mr. and Mrs. Joseph Grams, 1001 Tenth Avenue South."

There was no reference in the board's minutes to any discussion of the incident following the report. The minutes were prepared by the superintendent's secretary who determined for the most part what would be transcribed.

On March 4, 1968, the superintendent, who had been out of the city at the time of the accident, requested the principal to in-

vestigate fully "because such a file will no doubt be called for if a court case arises from same, *and this no doubt will occur.*" (Italics supplied.)

Plaintiffs contend that the form of notice states all the particulars required by the statute although it was prepared by school district employees; that it was signed by Grams in the presence of the highest administrative officer of the school district on duty and in charge at the time, within the time permitted by law, and was left at the administrative offices although no member of the governing board nor the superintendent was there; and that knowledge of the time, place, and circumstances of the accident reached the governing body by way of the superintendent's report and through Mogck and other school personnel within the time required and at the board's next meeting. At the time the notice was signed and presented to the school district in the offices of the superintendent of schools, the injured boy was in the University Hospitals incapable of doing anything to protect his interest.

The trial court in its memorandum stated:

"The decision which I have made was reached with the greatest reluctance. I do not think that a claimant, particularly an infant, who has been most seriously injured due to the alleged negligence of employees of the school district should be deprived of an opportunity to litigate the action on its merits, when a notice has been left in the office of the superintendent of schools of the school district and there cannot be any possible claim that the notice could have misled or prejudiced the school district. I have determined factually that the school district was cognizant of the injury and of the accident and had the full opportunity of complete investigation whether a notice was filed or not. \* \* \*"

Although plaintiffs admit that the notice Grams signed[1] was not intended by the personnel in the school district's office as

---

[1] "Name of Student  Stephen Grams  School Technical High School "Date of Accident  February 19, 1968  Time of Accident 9:20 A.M.

notice of a tort claim for damages, it is equally clear to this court that Grams intended the paper he signed to be a claim based on the negligence of employees of the school district for his son's injury and his own expenses in connection with the boy's treatment.[2]

The school district claims that it did not receive a sufficient written notice within 30 days as required by Minn. St. 466.05. L. 1963, c. 798, § 16, subd. 1, repealed Minn. St. 1961, § 465.09, which enumerated negligence of employees and defects in spec-

---

"Description of Accident

"Nature of Injury   While wrestling the cervical (neck) area of spine was injured.

"Place Injury Occurred   Phy. Ed. Wrestling Class.

"How Injury Occurred   Normal wrestling procedure—Nothing unusual.

"Cause of Injury   While wrestling and other than that we do not know.

"Teacher Supervisor at time of Injury   Don R. Nylund, Phil Rogosheske, Jim Noonan—all 3 of us present.

"Who is Administering Medical or Dental attention?

"Dr. Name   Dr. R. Cumming and Dr. Lyle French.

"1st date seen by doctor   February 19, 1968.

"I certify the information furnished is correct and complete, and I have not withheld any information that might disclose this claim to be invalid under the Benefit Plan rules.

"JOSEPH S. GRAMS
Parents Signature
"JUDY C. NOTSCH
Signature Benefit Plan Admin.

"Receipt of this notice is acknowledged: 2/27/68 Date Received."

[2] In Grams' affidavit, he stated: "* * * [W]hat I intended to do was to make a claim against the school district, and its insurance company if they had one, although I had been led to believe they didn't have insurance; I now understand that the school district does have liability insurance to cover injuries for which it is responsible; I intended the claim form I signed to cover all Stephen's injuries and all my expenses caused by the accident; that is what I understood from the people there, and after my talk with them; I didn't get a copy of the form there; I left it there; * * *."

ific types of municipal property as bases for liability of a city, village, or borough and required that notice of a claim based on such grounds be given within 30 days after the alleged loss or injury. Section 465.09 was replaced by Minn. St. 466.02, which imposes liability for its torts on "every municipality," [3] and § 466.05, which contains the present notice provisions. The trial court granted summary judgment for defendant school district on the basis of non-compliance with the notice provisions of § 466.05.

The issues presented by this appeal are as follows: (1) Was the writing referred to as a notice served or presented to the governing body of the school district in compliance with the provisions of Minn. St. 466.05? (2) Was such notice legally sufficient?

### Sufficiency of service of notice

■ Minn. St. 466.05, subd. 1, requires that one "who claims damages from any municipality for or on account of any loss or injury within the scope of section 466.02 *shall cause to be presented to the governing body* of the municipality within 30 days after the alleged loss or injury a written notice stating the time, place and circumstances thereof * * *." (Italics supplied.)

This section is applicable to the St. Cloud school district by virtue of Minn. St. 466.12, subd. 3, because the defendant school district obtained insurance.

Minn. St. 466.05 does not require formal service as the language "cause to be presented" appears to indicate a legislative purpose to permit bringing the claim to the attention of the board in an informal manner.

This court has said that notice is properly "presented" to a village council if addressed to the council and filed with the vil-

---

[3] Minn. St. 466.02: "Subject to the limitations of Laws 1963, Chapter 798, *every municipality is subject to liability for its torts* and those of its officers, employees and agents acting within the scope of their employment or duties whether arising out of a governmental or proprietary function." (Italics supplied.)

lage clerk or recorder. Doyle v. City of Duluth, 74 Minn. 157, 76 N. W. 1029; Roberts v. Village of St. James, 76 Minn. 456, 79 N. W. 519; Peterson v. Village of Cokato, 84 Minn. 205, 87 N. W. 615; Hebert v. Village of Hibbing, 170 Minn. 211, 212 N. W. 186.

In a case involving service upon an officer under a charter provision, this court said, in Kelly v. City of Minneapolis, 77 Minn. 76, 79, 79 N. W. 653, 654:

"* * * If we should hold that a statute which required a notice to be served upon an officer, naming him, must be construed as requiring such service to be made upon him solely, and that service upon his deputy is invalid and ineffectual, the profession would, we think, not only be surprised, but very much inconvenienced, and, in these days of much litigation, would frequently be deprived of all opportunity for serving notices and other legal papers. The charter provision was complied with when the notice was left at the clerk's office, in the hands of his assistant."

The trial court has cited Hirth v. Village of Long Prairie, 274 Minn. 76, 143 N. W. (2d) 205, and Johnson v. City of Chisholm, 222 Minn. 179, 24 N. W. (2d) 232, in its memorandum both as to the sufficiency of the service and the necessity of written notice. Defendant also relies on them on both grounds. The Johnson case was decided prior to Spanel v. Mounds View School Dist. No. 621, 264 Minn. 279, 118 N. W. (2d) 795, and Hirth was decided subsequent to Spanel (because of the date of the accident, Minn. St. 1961, § 465.09, was the applicable statute) but *both involved a failure to serve a written notice of claim of any description at any time.* They clearly are to be distinguished from the present case where there is a written notice. Defendant likewise relies on Olcott v. City of St. Paul, 91 Minn. 207, 97 N. W. 879. In Brittain v. City of Minneapolis, 250 Minn. 376, 384, 84 N. W. (2d) 646, 652, this court said the following about Olcott: "This case has been distinguished many times and seems at best narrow authority for the proposition it contains."

With regard to the method of serving or presenting the notice,

this court said, in Roberts v. Village of St. James, 76 Minn. 456, 457, 79 N. W. 519, 520:

"* * * In the cases of Doyle v. City of Duluth, 74 Minn. 157, 76 N. W. 1029, and Lyons v. City of Red Wing, supra, [76 Minn. 20, 78 N. W. 868] page 20, we indicated * * * [t]he method suggested for serving the notice * * * was to direct the notice to the council, and leave it with the clerk or other officer who had charge of the records and files * * *, with a request annexed that it be laid before the council at its next meeting; but the court did not hold that the suggested method was the exclusive one. * * *

"* * * The omission to annex to the notice a request that it be laid before the council was not fatal, for the notice was directed to the council, *and it was the duty of the recorder to lay it before that body at its next meeting, whether requested to do so or not.*" (Italics supplied.)

In Lyons v. City of Red Wing, 76 Minn. 20, 22, 78 N. W. 868, 869, this court considered the question of the service of the notice on a governing body when not in session as follows:

"* * * It is sufficient if the notice and claim reach the council or governing body of the municipal corporation in due time, although it passes through the hands of others."

An indication of the general liberality with which this court has viewed the notice provision may be found in 13A Dunnell, Dig. (3 ed.) § 6739. Sufficiency of service is also discussed therein as follows (p. 219):

"* * * There is no exclusive mode of serving the notice. It must be done in some practical, orderly, and effective way, and in determining the sufficiency of the method adopted in any particular case technical strictness will not be required. A substantial compliance with the statute is sufficient. If the notice is to be presented to the council when it is in session, the orderly course of procedure is to deliver it to the clerk, or other officer

490

having charge of the records of the council, for its consideration. *If the council is not in session when the notice is served, it may be directed to the council, and left with the clerk or other officer who has charge of the records and files of the council, with a request annexed that it be laid before the council at its next meeting; but such request is not essential. It is sufficient if the notice reaches the council or governing body in due time, though it passes through the hands of others.* Service on the mayor is insufficient. Service on a village recorder is sufficient, if made at his office or place of transacting his official business. Service on an assistant city clerk has been sustained." (Italics supplied.)

In the California case of Phillips v. Huntington Beach Elementary School Dist. 8 Cal. (2d) 553, 555, 66 P. (2d) 657, 658, the court stated in a per curiam opinion:

"* * * The jurisdictional claim [notice] * * * must be presented and filed with the clerk or secretary of the school district and we think that a presentation and filing with a de facto clerk would be perfectly valid * * *."

See, Annotation, 23 A. L. R. (2d) 969.

The trial judge made the following observation in his memorandum about the question of service on a school board:

"Now that school districts have come within the orbit of the statute [§ 466.05], I am sure that the Bench and Bar of this state would be grateful if some suggestion were made by the Supreme Court as to how proper and orderly service may be made upon the governing body of the school district, namely, the school board. As already noted, the Supreme Court has suggested that proper service may be made by leaving a notice with the clerk or officer who has charge of the records and files of the council of a city or village with the request that the same be presented to the council at its next meeting. Seemingly, the same end would be achieved by substituting superintendent of schools in the case of a school district, and that in his absence the same could be left

with anyone under his supervision and then in charge of his office."

We think the request for guidelines by the trial judge is both sound and appropriate, particularly in the light of the number of school districts which have come and will come under the provisions of Minn. St. c. 466. Accordingly, we hold that service may be made on the governing board of a school district by leaving a notice with the superintendent of the district, or in his absence with anyone under his supervision then in charge of his office, to be presented to the board at its next meeting. We likewise hold that in this case the notice signed by Grams and left at the administrative office of the school district within the time required by law satisfied the requirements of service.

### Sufficiency of notice

■ The notice is required to state "the time, place and circumstances [of the alleged loss or injury]." Minn. St. 466.05, subd. 1. Where a claim is made based upon a defect in a sidewalk, street, or other municipal property, the failure to identify the defect, the time, and more particularly the place, understandably would not apprise the municipality sufficiently so it could investigate. Unlike an injury occurring from a physical defect, the injury in this case occurred in a class where there were three instructors present.

The purpose of the notice, as we held in Kandelin v. City of Ely, 110 Minn. 55, 58, 124 N. W. 449, 450, is—

"* * * to furnish the municipal officers information of the time and place of an accident and the nature of the injuries received, to the end that due investigation may be made to determine the truth and merits of the claims made. Any notice, therefore, which conveys information sufficient to enable the municipal officers to determine these facts, answers every purpose of the statute."

We addressed ourselves to the purpose of the notice also in

Brittain v. City of Minneapolis, 250 Minn. 376, 383, 84 N. W. (2d) 646, 651, where we said:

"The city contends that the plaintiff's notice of claim was defective in the following respects: That the site of the accident was not adequately described; that the defect causing the accident was not specified; and that the evidence produced at the trial was in fatal variance with the allegations in the notice. It seems to be well established that the purpose of the notice is to give the municipal officers information which will enable them to ascertain and investigate the *facts* and thus to determine whether a liability exists and if so the nature and extent of such liability. In Terryll v. City of Faribault, 81 Minn. 519, 84 N. W. 458, this court held that, except where the notice itself is misleading so as to prejudice the defendant, the notice will not be adjudged defective. In Harder v. City of Minneapolis, 40 Minn. 446, 42 N. W. 350, the notice of claim was held valid even though, in describing the accident area by reference to contiguous streets, one of the streets was erroneously named. This court held that despite the error reasonable diligence on the part of the city officers could have properly identified the site of the accident." (Italics supplied.)

This court in Hebert v. Village of Hibbing, 170 Minn. 211, 213, 212 N. W. 186, said:

"At the trial the court received in evidence, over defendant's objection, the notice of accident * * * . The objection thereto was * * * that it is insufficient under the law in that the place designated where the accident occurred is not definite, there being no alley in that vicinity as stated in the notice. * * *.

"The notice was adequate even though there was no legally established alley between First avenue and the railroad tracks."

The Connecticut court's holding in Cassidy v. Town of Southbury, 86 Conn. 45, 84 A. 291, is commented on in Annotation, 63 A. L. R. (2d) 863, 868, as follows:

"The statutory notice as to the nature of the injury was not prescribed to throw useless obstacles in the way of a claimant, but its sole purpose is to furnish the party against whom a claim is to be made such warning as will prompt him to make such inquiries as he might deem necessary or prudent for the preservation of his interests, and such information as would furnish him a reasonable guide in the conduct of such inquiries * * * since the notices were to be furnished by plain men, often of limited education, there was no intention that it be couched in technical language or expressed with the nicety or exactness of a pleading, or contain a description of the injury in detail, the sufficiency of the notice to be tested with reference to the purpose for which it was required."

Most of the cases refer to claims arising out of defects in, or improper maintenance of, streets, sidewalks, etc. In Anderson v. City of Minneapolis, 138 Minn. 350, 352, 165 N. W. 134, this court said:

"* * * The notice need not state the circumstances or facts with that fullness and accuracy required in a pleading. In a personal injury claim it is sufficient if it specifies the cause of the injury, so that the officers or agents of the city can ascertain the facts in connection therewith without being misled. [Citations omitted.] The main purpose of the statute is not to require such a statement of the circumstances as to show an absolute liability, but rather such information that the authorities may be able to make a full investigation of the cause of the injury and determine the city's liability therefor."

The statute requires that the notice set forth the "circumstances" of the "loss or injury." According to Black, Law Dictionary (Rev. 4 ed.) p. 308, the definition of "circumstances" is given as "[a]ttendant facts," or "occurrences or things which * * * attend upon," etc. In 1 Bouvier's Law Dictionary, p. 569, the words "circumstances" and "facts" are given as synonyms.

The trial judge, with commendable candor and courage, made

the following observation about the sufficiency of the "facts" received by the school district:

"As first stated, I am unable to understand how the school district could have been prejudiced by the nature of the claim filed because the school district and/or its employees had complete knowledge of the incident and were in possession of all facts upon which a claim could or could not be asserted. And the school district does not claim that it was any way misled by the nature of the notice. Thus, I again reiterate that I think that to avoid hardship and injustice this action should be tried on its merits and the notice should be sustained."

The notice, in our judgment, despite its form and exculpatory language, apparently written by school personnel, served the purpose it was designed to accomplish under Minn. St. 466.05 and was sufficient, as we articulated in the Kandelin case (110 Minn. 58, 124 N. W. 450), "to furnish the municipal officers information of the time and place of an accident and the nature of the injuries received, to the end that due investigation may be made to determine the truth and merits of the claims made."

The notice in this case was sufficient to enable the school district to determine the facts; and we hold that defendant district received actual notice of the time, place, and circumstances of the accident. Accordingly, the requirements of the statute were met.

Reversed.

MR. JUSTICE MURPHY and MR. JUSTICE ROGOSHESKE took no part in the consideration or decision of this case.