[No. 43637.   En Banc.   September 11, 1975.]

GERALD HUNTER, JR., *Respondent*, v. NORTH MASON HIGH
SCHOOL AND SCHOOL DISTRICT No. 403, *Petitioner*.

*Bishop, Cunningham & Costello*, by *John A. Bishop* and
*Leonard W. Costello*, for petitioner.

*Hoff & Cross*, by *Geoffrey C. Cross* and *Neil J. Hoff*, for
respondent.

UTTER, J.—This case presents this court once again with the question of the scope and constitutionality of statutes requiring persons suing the government to give it notice of their claims within a short period after they arise. Respondent Hunter's suit against the petitioner high school and school district for injuries he sustained in a physical education class was dismisssed on the grounds that he had failed to give the defendants formal notice of his claim within 120 days, as required by RCW 4.96.020.[1] The dismissal was reversed by the Court of Appeals, which held that the respondent's minority excused him from compliance with the "nonclaim" requirements of that section. *Hunter v. North Mason High School*, 12 Wn. App. 304, 529 P.2d 898 (1974). We affirm that decision, but on the ground that "nonclaim" statutes unjustifiably discriminate against persons with claims against the government and its subdivisions in violation of the equal protection clause of the Fourteenth Amendment.

In September 1970, respondent Gerald Hunter incurred a knee injury in a rugby game held as part of a physical education class at North Mason High School. His injury apparently required considerable medical attention, and some 50 days after the injury his father notified the school principal that his insurance might not cover the costs and that it might be necessary to resort to the school's Catastrophic Major Medical Policy. The principal conveyed this information to the school's insurance carrier by letter. He also wrote short notes to the school district and respondent's doctor describing the circumstances of the injury.

---

[1] RCW 4.96.020 provides in part:

"(2) The provisions of this subsection shall not apply to claims against cities and towns or counties but shall apply to claims against all other political subdivisions, municipal corporations, and quasi municipal corporations. Claims against such entities for damages arising out of tortious conduct shall be presented to and filed with the governing body thereof within one hundred twenty days from the date that the claim arose. . . . No action shall be commenced against such entity for damages arising out of tortious conduct until a claim has first been presented to and filed with the governing body thereof."

Neither he nor Mr. Hunter, however, gave the district formal notice of the claim as required by RCW 4.96.020. When, more than a year after the injury was incurred, this suit was filed, the petitioners moved to dismiss it on the grounds of respondent's noncompliance with that statute; the trial court granted their motion.

In *Cook v. State*, 83 Wn.2d 599, 521 P.2d 725 (1974), eight members of this court voted to reverse the dismissal of a minor's suit against the state for injuries she received in an automobile accident. Five of the Justices rested their decision on the ground that the plaintiff's age and disabilities excused her noncompliance with RCW 4.92.100, which requires notice of claims against the state within 120 days from the date they arise. Three Justices concurred on the basis of their conviction that the section was invalid altogether, because it deprived victims of governmental torts of due process and equal protection; in dictum the majority opinion rejected this contention.

The same day *Cook* was filed a similar decision was rendered in *Shafer v. State*, 83 Wn.2d 618, 521 P.2d 736 (1974). There, again, three concurring Justices held that the state nonclaim statute was unconstitutional, but again the plurality decision was based on nonconstitutional grounds.

The issues presented in this case are very similar to those in *Cook*. The Court of Appeals decision expanded *Cook*'s majority opinion by holding that not only severely disabled minors, but *all* minors, are exempt from the requirements of nonclaims statutes. *Cook*'s holding was expressly based on its majority's recognition that failure to except seriously injured minors from the notice requirements would "do violence to due process and equal protection concepts." *Cook v. State, supra* at 606. The Court of Appeals in this case justified its ruling on similar grounds. *Hunter v. North Mason High School, supra* at 306-07. We feel, however, that rather than attempting to avoid the constitutional problems inherent in this type of statute by continuing to fashion

judicial exceptions to their plain language, we should face the constitutional issue directly and acknowledge their infirmity.

The effect of this and other[2] nonclaim statutes is to deny a right of action to persons harmed by governmental misfeasance unless they provide the government with notice of their injuries within a short time after they occur. This prerequisite to tort recovery has no counterpart in actions between private parties. The statutes thus create two classes of tort-feasors, governmental and nongovernmental, and grant the one a procedural advantage not available to the other. Concomitantly they produce two classes of tort victims and place a substantial burden on the right to bring an action of one of them.

> Just as the notice requirement by its operation divides the natural class of negligent tortfeasors, so too the natural class of victims of negligent conduct is also arbitrarily split into two subclasses: victims of governmental negligence who must meet the requirement, and victims of private negligence who are subject to no such requirement.

*Reich v. State Highway Dep't*, 386 Mich. 617, 623, 194 N.W.2d 700 (1972). Under this statutory system, victims of governmental torts must seek legal advice and act to preserve their claims within 120 days of receiving their injury. Other personal injury plaintiffs need only act within the limitations period—3 years at least in the case of adults (RCW 4.16.080), often much longer in the case of minors, against whom the limitations period does not run. RCW 4.16.190.[3]

Nonclaim statutes constitute a barrier to suit for a significant number of victims of governmental misfeasance. It is

---

[2]*See* RCW 4.92.100 (notice of claims against the state); RCW 35.31.020 (notice of claims against charter cities); RCW 36.45.020 (notice of claims against counties).

[3]Respondent Hunter was 16 at the time he was injured. He therefore would have had 5 years to act on his claim—2 years until the statute of limitations began to run, 3 thereafter—had it been against a nongovernmental entity. As it was, he had 4 months.

a rare plaintiff who happens to know of the short notice period he must comply with,[4] or to consult a lawyer before his time to file has expired. Only where the injured person is educated or well advised enough to know in advance of his or her legal rights is compliance with the notice requirements realistically possible. By increasing the demands on the potential plaintiff, these statutes grossly magnify the unfair impact of the unequal distribution of legal counsel and knowledge between rich and poor.

> Ordinarily the affluent and educated tort victim has a retained or family attorney. His attorney may ethically —and probably does—come forward to inform his client of the notice requirement. Iowa Code of Professional Responsibility for Lawyers, Ethical Canon 2-3. It is the poor, uneducated tort victim, without counsel and unacquainted with lawyers, who naively assumes he will be compensated and unknowingly permits the notice time to lapse.

*Lunday v. Vogelmann*, 213 N.W.2d 904, 911-12 (Iowa 1973) (Reynoldson, J., dissenting).

██ The effect of the notice requirement on tort victims not fortunate enough to be aware of it is to deny them their cause of action. The right to be indemnified for personal injuries is a substantial property right, not only of monetary value but in many cases fundamental to the injured person's physical well-being and ability to continue to live a decent life. Statutory classifications which substantially burden such rights as to some individuals but not others are permissible under the equal protection clause of the Fourteenth Amendment only if they are

> reasonable, not arbitrary, and . . . rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." *Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 (1920).

---

[4]It is noteworthy that respondent and his father were not alone in their lack of knowledge of the requirement that they file notice of their claim within 120 days: the record reveals the principal of appellant's high school, with whom they discussed the claim, did not know of the filing requirement either.

*Reed v. Reed,* 404 U.S. 71, 76, 30 L. Ed. 2d 225, 92 S. Ct. 251 (1971); *Kahn v. Shevin,* 416 U.S. 351, 355, 40 L. Ed. 2d 189, 94 S. Ct. 1734 (1974); *Dandridge v. Williams,* 397 U.S. 471, 520-22, 25 L. Ed. 2d 491, 90 S. Ct. 1153 (1970) (Marshall, J., dissenting); *Washington Statewide Organization of Step-parents v. Smith,* 85 Wn.2d 564, 572, 536 P.2d 1202 (1975) (Utter, J., concurring).[5]

The "ground of difference" most often put forward as justification for the special demands nonclaim statutes place on persons with claims against the government and its subdivisions is the size of governmental institutions and the number of activities they are involved in. The government, it is argued, is so large and subject to so many claims

[5]This "substantial rationality" requirement has been reenunciated in recent decisions of the United States Supreme Court. *See* Gunther, *Foreword: In Search of Evolving Doctrine on a Changing Court: A Model for a Newer Equal Protection,* 86 Harv. L. Rev. 1 (1972). It does not reduce the "strict scrutiny" appropriate where fundamental rights or "suspect classifications" are affected. *See, e.g., Memorial Hosp. v. Maricope County,* 415 U.S. 250, 39 L. Ed. 2d 306, 94 S. Ct. 1076 (1974); *In re Griffiths,* 413 U.S. 717, 37 L. Ed. 2d 910, 93 S. Ct. 2851 (1973); *State v. Koome,* 84 Wn.2d 901, 530 P.2d 260 (1975). Nor does it alter the strong presumption of constitutionality given classifications in state regulation of business and economic matters, which are invalid only if they fail to bear a "rational relationship" to a permissible state objective. *Belle Terre v. Boraas,* 416 U.S. 1, 39 L. Ed. 2d 797, 94 S. Ct. 1536 (1974); *United States v. Kras,* 409 U.S. 434, 34 L. Ed. 2d 626, 93 S. Ct. 631 (1973); *Sonitrol Northwest, Inc. v. Seatle,* 84 Wn.2d 588, 528 P.2d 474 (1974).

According to Gunther, the court in some cases has been focusing on the substantiality of the relationship between the discrimination made and the state objectives allegedly furthered thereby, rather than on the validity or importance of those objectives. *See* Gunther, *supra* at 20-24. If the statutory lines substantially conform to a permissible state purpose, the distinction they draw will survive judicial review without any "balancing" of the relative value of the interests they advance and those they inhibit. If they do not they will not, for discriminatory legislation cannot be validated by reference to a purpose it does not serve, however laudable or important that purpose may be.

We do not need to rest our decision in this case on the "substantial basis" test of *Royster Guano Co. v. Virginia,* 253 U.S. 412, 64 L. Ed. 989, 40 S. Ct. 560 (1920) alone, however: there is, in fact, not even a *reasonable* difference between the classes involved here which relates to a legitimate state interest. *Cook v. State, supra* at 607, 614 (concurring opinion); *see* footnote 8, *infra.*

that its agents are not necessarily aware of potentially liability-producing incidents, and therefore need special notice to adequately investigate and defend against them. *Cook v. State, supra* at 603.[6] But if this be the reasoning behind these statutes, the discrimination they make poorly reflects it. Governmental bodies range in size from small municipal corporations such as the petitioner school district to the State itself. As a class they are neither larger nor more liability-prone than the class of private tort-feasors, which includes everything from single individuals to giant corporations financially larger even than the State.

Most governmental subdivisions are small enough for their officials to know of incidents which may subject them to liability. In addition, they possess special investigative resources which make them "in most instances better equipped to investigate and defend negligence suits than most private tort-feasors, for whom no special notice privileges are provided by law." *Cook v. State*, 83 Wn.2d 599, 614, 521 P.2d 725 (1974) (concurring opinion). In the case at bar the school and school district were aware from the first of respondent's injury and their possible liability therefor. Even before Mr. Hunter contacted the principal, and he in turn the district, the school had a report of the incident made and on file. Such cognizance of possible liabilities is likely the rule rather than the exception when municipalities are involved. *Lunday v. Vogelmann, supra* at 910-11 (Reynoldson, J., dissenting). The privilege of special notice given governmental bodies, and the burden concomi-

[6] *See also Roberts v. State*, 39 Cal. App. 3d 844, 848, 114 Cal. Rptr. 518 (3d Dist. 1974); *Jorstad v. Lewiston*, 93 Idaho 122, 125, 456 P.2d 766 (1969); *Galbreath v. Indianapolis*, 253 Ind. 472, 477, 255 N.E.2d 225 (1970); *Lunday v. Vogelmann*, 213 N.W.2d 904, 907 (Iowa 1973); *Cornett v. Neodesha*, 187 Kan. 60, 63, 353 P.2d 975 (1960); *Grams v. Independent School Dist. 742*, 286 Minn. 481, 491-92, 176 N.W.2d 536 (1970); *Atlantic Aviation Corp. v. New York Port Authority*, 66 N.J. Super. 15, 20, 168 A.2d 262 (Law Div. 1961); *Mapley v. Board of Educ.*, 13 Misc. 2d 88, 91, 175 N.Y.S.2d 354 (Sup. Ct. Onondaga County 1958); *El Paso v. Nicholson*, 361 S.W.2d 415, 417 (Tex. Civ. App. 1962); Farrall, *Delay in Notice of Tort Claim Against a Government Agency*, 20 Clev. St. L. Rev. 23, 24 (1971).

tantly placed on those with suits against them, cannot therefore correspond to any special need or inability to investigate particular to them.

The other objectives nonclaims statutes have been said to serve relate no more substantially to the distinction they draw. Special notice of possible future claims does little to facilitate budget planning (*Lunday v. Vogelmann, supra* at 907), as governmental entities so small as to be unable to use actuarial methods to forecast liabilities and self-insure, usually will purchase insurance like any private individual or corporation.

> [M]unicipalities seldom budget for claim payments; they carry liability insurance as the statutes permit.[7]

*Lunday v. Vogelmann, supra* at 910 (Reynoldson, J., dissenting). The school district here carried liability insurance, and through its premiums spread and provided for the losses it incurred through tort liability in any given year. It needed no special warning to plan against the possibility that it might be sued by respondent—its budget would be unaffected in any event. Similarly, the importance of immediate knowledge of hazards in order to make repairs and avoid further injuries (*Cornett v. Neodesha, supra* at 63) is no greater because the entity responsible for them happens to be part of the government. And fostering negotiation and settlement to reduce the amount of litigation (*Jorstad v. Lewiston*, 93 Idaho 122, 125, 456 P.2d 766 (1969); *El Paso v. Nicholson*, 361 S.W.2d 415, 417 (Tex. Civ. App. 1962)) is desirable no matter who the parties are.

In light of these considerations, the only function the special treatment given governmental bodies seems to per-

---

[7]Several statutes in this state particularly permit or require school districts to purchase liability insurance for themselves or their agents in certain circumstances. *See* RCW 28A.24.055, 28A.58.420, 28A.58.423, 28A.58.425. Even where no such specific statutory authorization exists, the power of municipal corporations to purchase liability insurance is implicit in their power to conduct the activities they need to insure. *Travelers' Ins. Co. v. Wadsworth*, 109 Ohio St. 440, 142 N.E. 900, 33 A.L.R. 711 (1924); 1 Yokely, *Municipal Corporations* 123 (1956).

form is the simple protection of the government from liability for its wrongdoing. Our State has clearly and unequivocally abjured any desire to so insulate itself from liability, however, in its absolute waiver of sovereign immunity, which places the government on an equal footing with private parties defendant.

In *Kelso v. Tacoma*, 63 Wn.2d 913, 918, 390 P.2d 2 (1964), we recognized that the legislature's manifest intent to "change the public policy of the state" away from sovereign immunity deprived municipal corporations as well as the State itself of all vestiges of the shield they had at common law. *See generally Cook v. State, supra* at 607-13 (concurring opinion) and cases there cited. This intention, we noted in *Kelso*, was clarified beyond any doubt by the passage of Laws of 1963, ch. 159, § 2, which provided that the State *"shall be liable* for damages arising out of its tortious conduct to the same extent as if it were a private person or corporation." (Italics ours.) That act also, significantly, eliminated the proviso in Laws of 1961, ch. 136, § 1 that the State's consent to be sued

> shall not affect any special statute relating to procedure for filing notice of claims against the state or any agency, department or officer of the state.

The unequivocal waiver of sovereign immunity in the 1963 act thus clearly indicates that "the [State's] waiver of tort immunity is unbridled by procedural conditions pertaining to the consent to be sued . . ." *Cook v. State, supra* at 613 (concurring opinion).

██ Any policy of placing roadblocks in the way of potential claimants against the state having been abandoned, we cannot uphold nonclaim statutes simply because they serve to protect the public treasury. Absent that justification, there is no basis, substantial or even rational,[8] on

---

[8]The concurring opinion in *Cook v. State, supra*, found that no rational relationship existed between the discrimination made by the nonclaims statutes and the purposes they were argued to serve. We adopt that conclusion here, and hold that whether the old "minimum scrutiny" or the newer "substantial relation" test is applied, the nonclaims statutes cannot pass constitutional muster.

which their discrimination between governmental plaintiffs and others can be supported. They thus cannot stand under the equal protection clause of the Fourteenth Amendment or Const. art. 1, § 12.[9] We follow a growing number of courts in holding that the arbitrary burden placed on state claimants by this type of statute cannot withstand constitutional scrutiny. *See Reich v. State Highway Dep't*, 386 Mich. 617, 194 N.W.2d 700 (1972); *Turner v. Staggs*, 89 Nev. 230, 510 P.2d 879 (1973), *cert. denied*, 414 U.S. 1079 (1973).

The apparently abrupt shift in reasoning between our decision in this case and the majority dicta in *Cook* is an example of the continual reexamination of rationales and principles that is necessary in constitutional decision making. "The present has a right to govern itself, so far as it can . . . Historical continuity with the past is not a duty, only a necessity." O. Holmes, *Collected Legal Papers* 139 (1920). Judges operating in the present, searching for constitutional guidance, cannot find in that document itself many specific rules for the application of its principles. The constitution fails to speak with specificity on most of the subjects on which we must turn to it. This, in itself, is a source of its strength, longevity and vitality.

The Constitution deals with great powers, many of them undefined, but they are decentralized, separated and distributed, checked and balanced, limited and prohibited.

---

[9]The requirements of the special privileges and immunities prohibition of Const. art 1, § 12 are in most cases at least as stringent as those of the federal equal protection clause. Ordinarily inconsistency with the one would necessarily imply inconsistency with the other. *State v. Perrigoue*, 81 Wn.2d 640, 503 P.2d 1063 (1972); *State v. Nixon*, 10 Wn. App. 355, 517 P.2d 212 (1973). The state provision explicitly states, however, that special privileges cannot be given "corporation[s] other than municipal," thus implying that discrimination in favor of the municipal corporations is permissible under it. The nonclaims statutes at issue here are not limited in their effect to different types of corporations, though. They create classes not only of corporate tort-feasors, but of individual tort victims. It is the latter discrimination that we hold fails to satisfy the requirements of the special privileges and immunities clause. *Cf. Harvey v. Clyde Park Dist.*, 32 Ill. 2d 60, 65, 203 N.E.2d 573 (1965).

At the same time, most notably through the Bill of Rights and the great Reconstruction amendments, the Constitution requires that the game shall be played freely and fairly, with the judiciary as the umpire. "The great ideals of liberty and equality," wrote Justice Cardozo, "are preserved against the assaults of opportunism, the expediency of the passing hour, the erosion of small encroachments, the scorn and derision of those who have no patience with general principles, by enshrining them in constitutions, and consecrating to the task of their protection a body of defenders."

L. Levy, *Judgments: Essays on American Constitutional History* 18 (1972). It is in this spirit, mindful of this admonition, that we continue to seek the ill-defined parameters of the equal protection clause.

The *Cook* majority said the statute at issue there was constitutional, but had to carve an exception out of it to make it so. The Court of Appeals in this case began the inevitable process of expanding that exception. We choose to recognize the inequities in these statutes and strike them down on that account, rather than to proceed further with the long and costly process of attempting to correct them through case-by-case modification. In so doing we follow the spirit of the *Cook* majority, if not its letter: the unjustifiable discriminations these statutes make preclude their enforcement, not just in some cases but in all.

The decision of the Court of Appeals is affirmed.

FINLEY, ROSELLINI, HUNTER, BRACHTENBACH, and HOROWITZ, JJ., concur.

WRIGHT, J. (concurring in the result)—I concur in the result reached by the majority.

I would adhere to the opinion of the Court of Appeals in this matter. *Hunter v. North Mason High School*, 12 Wn. App. 304, 529 P.2d 898 (1974). I further accept the reasoning therein.

I find it impossible to agree with the dissent herein when applied to a minor.

On the other hand, I feel bound by the decision of a majority of this court in *Cook v. State*, 83 Wn.2d 599, 521 P.2d 725 (1974) and, therefore, cannot agree with the majority herein.

HAMILTON, J., concurs with WRIGHT, J.

STAFFORD, C.J. (dissenting)—I dissent. Once again the majority has chosen to ignore the clear dictate of Const. art. 2, § 26 which provides:

> The *legislature* shall direct by law, in what manner, and in what courts, suits may be brought against the state.

(Italics mine.) My objection to the action taken by the majority has been stated in both *Cook v. State*, 83 Wn.2d 599, 521 P.2d 725 (1974) and *Shafer v. State*, 83 Wn.2d 618, 521 P.2d 736 (1974). Nothing will be gained by repeating it.