## Graham v. Commonwealth.

(Decided March 16, 1917.)

### Appeal from Graves Circuit Court.

1. Forgery—Uttering or Publishing Forged Instrument.—Upon a trial for publishing and uttering a forged check, the fact that the defendant had other forged checks in his possession was competent to show his guilty knowledge.

2. Criminal Law—Refusal to Set Aside Verdict.—A verdict of conviction will not be set aside unless it is flagrantly against the weight of the evidence.

WILLIAM S. FOY for appellant.

M. M. LOGAN, Attorney General, and D. O. MYATT, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Affirming.

The appellant appeals from a judgment convicting him of the crime of uttering and publishing a forged check with the intention to defraud another, and asks a reversal upon two grounds: (1) that the verdict is not supported by the evidence; and, (2) that the court erred in admitting the testimony of W. B. Sullivan, and certain checks, as evidence in the case.

T. L. Stovall is a merchant in Mayfield; Sam R. Happy is his clerk. On county court day, late in March, 1916, a man unknown to Happy, entered Stovall's store and bought a pair of shoes and two work shirts. In payment of his bill the man gave Happy a check for $21.55, drawn in the name of W. P. Stropp upon the Exchange Bank at Mayfield, and payable to the order of T. T. Smith, or bearer. The check was dated March 18, 1916, and bore the endorsements of T. T. Smith and C. Scott. Happy accepted the check and gave the customer about $15.00 in change. The check proved to be a forgery, and was never paid.

About a month later, the appellant, Graham, was in Stovall's store and Happy recognized him as the man who had given him the forged check. Happy informed Stovall of the fact; whereupon Stovall approached Graham, telling him that Stropp claimed the check was forged. Stovall testified that Graham said he was not the guilty party; that he did not think the check was forged; but that he did not want to have any trouble

about it, and would pay the money rather than have any trouble about it.

Happy heard the conversation and corroborates Stovall. Happy further testified that he identified Graham by the shoes he wore, Happy claiming they were the same pair of shoes, known as the "Elephant" brand, that he had sold to Graham, in March. He admitted, however, that shoes of the "Elephant" brand are quite common; are sold by merchants generally throughout the country; and that there was nothing on the shoes he sold in March that would indicate they had ever been a part of Stovall's stock of goods.

The forgery was shown by Stropp, the alleged drawer of the check.

Sullivan, the sheriff, testified that shortly before he arrested Graham, and while he was walking behind him on the street, Sullivan saw Graham pull some papers out of his coat pocket, and drop them on the street. Sullivan's companion picked them up and they proved to be three checks, one purporting to have been drawn by Tom Usher for $19.50; another by Sisson & Rhodes for $15.00, and a third by Andy Bennett for $20.00. The first check was payable to J. J. Johnson, the second to W. E. Carter, and the third to T. B. Burnett.

It is complained that the court erroneously admitted this testimony of Sullivan, and the checks, in evidence. There was, however, no objection to any of it.

Graham flatly contradicted Happy and Stovall, insisting that he had not been in Stovall's store at any time before April, and that he did not pass the Stropp check. Furthermore, Graham swore that on the day it is claimed he passed the check he was working with his father, burning a tobacco bed in Calloway county, about thirty miles from Mayfield; that he had bought the shoes he was wearing at Puryear, Tenn.; and, in this testimony he is corroborated in a large measure by his father.

Graham further testified that he had never seen Happy, and had never been in the Stovall store before the day he was arrested, in April. When asked about the checks which he admitted he had dropped on the street, Graham gave the following explanation:

"Q. You heard the testimony of Mr. Sullivan that about the time you were arrested you dropped some papers by your side; tell the jury whether you did, and

.what they were? A. Well, they were just some checks that I wrote at home on a rainy day, and I found them in my pocket. I was feeling in my pocket for my pipe, and I knew the checks were not any good, and I just threw them out of my pocket on the street. Q. Just tell the jury why you wrote those checks, and all about that? A. Well, it was a rainy day and I was sitting around home doing nothing, and just for pastime I wrote them.''

He further stated that the checks were worthless and that he did not attempt to use them, in any way, and had never intended to do so.

The three checks were admitted in evidence only after appellant had identified them as being the same checks he had written.

The foregoing testimony, and that of nine character witnesses, constituted all the proof in the case.

Not only were the checks and the testimony of Sullivan admitted without objection, but the checks were clearly competent to show appellant's guilty knowledge in this case. 3 Greenleaf's Ev. (16th ed.) sec. 111. It will thus be seen that there was ample testimony to take the case to the jury upon the question of appellant's guilt. The proof to sustain the alibi plea was not very strong, while the appellant's testimony was strongly incriminating.

A verdict of conviction will not be set aside unless it is flagrantly against the weight of the evidence; but it cannot be said that the verdict in this case is flagrantly, or otherwise, against the evidence. On the contrary, there was ample testimony to sustain it. Chaney v. Commonwealth, 149 Ky. 464; Black v. Commonwealth, 154 Ky. 444; Cavanaugh v. Commonwealth, 172 Ky. 799.

Judgment affirmed.