## Siegel v. Commonwealth.

(Decided October 2, 1917.)

### Appeal from Campbell Circuit Court.

1. **Forgery—Uttering or Publishing Forged Instrument—Statute.**— Kentucky Statutes, section 1213a, does not embrace the offense defined in Kentucky Statutes, section 1189. The offense denounced by section 1189 is that of forgery and counterfeiting and includes the mere erasing or altering as well as the forging or counterfeiting of a bank bill, note, check, draft or certificate of deposit of money in a bank; and also provides a penalty for the violation of the provisions of the section. Section 1213a defines and provides a penalty for a wholly different offense, viz.: that of drawing, uttering or delivering any check, draft or order for the payment of money upon a bank or other depository with intent to defraud and with knowledge on the part of the drawer, utterer or deliverer of the check, draft or order for the payment of money that there are not sufficient funds in the bank or depository upon which it is drawn for the payment of such check, draft or order in full upon its presentation. The language of section 1213a includes, therefore, the mere endorser of a check, draft or order for the payment of money upon any bank or other depository, who passes it by his endorsement and delivery to another with intent to defraud, knowing at the time of such endorsement and delivery of the check that the maker or drawer has not sufficient funds in such bank or depository for the payment of such check, draft or order in full upon its presentation. As the indictment against the endorser and user of the worthless check in this case follows the language of section 1213a in setting forth the acts constituting the offense charged, and the offense is one denounced by the section, the action of the trial court in overruling the defendant's demurrer to the indictment and his motion in arrest of judgment was not error.

2. **Criminal Law—Evidence—Competency.**—Where the intent, knowledge or motive under which the defendant did the act charged against him can only be shown by circumstantial evidence, evidence of another like crime committed by him about the same time, and by a like method, will be competent to establish the motive or intent with which the act constituting the offense for which he is being tried was committed.

HORACE W. ROOT for appellant.

M. M. LOGAN, Attorney General, and OVERTON S. HOGAN, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE SETTLE—Affirming.

The appellant, I. Siegel, was indicted in the Campbell circuit court for "knowingly, fraudulently, unlawfully and feloniously uttering and delivering a check or order for the payment of money upon a bank, knowing at the time of such uttering and delivering that the maker or drawer had not sufficient funds in such bank for the payment of said check or order in full upon its presentation." The trial resulted in appellant's conviction and the fixing of his punishment at confinement in the penitentiary one year. By this appeal he seeks the reversal of the judgment of conviction.

Although at the beginning of his trial appellant pleaded "not guilty" to the charge in the indictment, this plea was withdrawn by him at the conclusion of the Commonwealth's evidence and in lieu thereof a plea of "guilty" entered. The facts disclosed by the only evidence introduced, that of the Commonwealth, show that on December 13, 1916, appellant pretended to rent of Mrs. Virginia Rugg, of Newport, a certain building for the avowed purpose of conducting a "ladies and gents" dry goods store. At the time he paid her, as a deposit on the rental contract, $2.00, and put a placard on the front of the building containing the announcement that he would in a few days open a "ladies and gents" dry good store therein. On the day following, December 14th, he went to the German National Bank, and, proclaiming his purpose to become a customer of the bank, gave his address as at the building of Mrs. Rugg, and made a money deposit of $155.00. On the 15th and 16th he also made money deposits in the bank, which, with the $155.00 deposited on the 14th, made a total of $220.00 in currency. On December 18th he deposited in the same

bank two checks, one of $96.03, purporting to have been drawn by J. Breslaur & Son on the Richmond Borough National Bank of Stapleton, N, Y., payable to H. Horowitz, on the back of which appeared the signatures of H. Horowitz and I. Siegel. The other check, for $83.24, purported to be drawn by a different person on the Jefferson Trust Company, of New York City, and to be endorsed by the payee therein and also by appellant, whose name appeared last on the back of the check. These two checks, with the previous money deposits aggregating $220.00, made a total deposit in the bank of $399.27 to his credit. As the check of $83.24 is involved in a different indictment against the appellant and is not copied in the record of this case, a further description of it will not be attempted. The check here in question is the one of $96.03.

It appears from the evidence that it required four days to send this check by due course of mail to the Richmond Borough National Bank, and that when it reached that bank it refused to pay the check and returned it to the German National Bank, accompanied by the information that J. Breslaur & Son, the purported drawers of the check, did not then have, and had never had, any account with the Richmond Borough National Bank, or any money on deposit therein. It further appears from the evidence that within a day or two after appellant deposited the checks of $96.03 and $83.24 in the German National Bank, and before either of them could reach the bank upon which it was drawn, he drew a check upon the German National Bank for $394.99, and upon presentation of the check at that bank obtained thereon in money that amount, thereby leaving only $4.28 to his credit on the books of the bank. Immediately after this he disappeared from Newport without having opened the store rented from Virginia Rugg, and some months later was arrested in Chicago, Ill., and returned to Newport for trial in the Campbell circuit court under the indictment in this case. He was never seen by Mrs. Rugg after he placed upon the building he had rented of her the placard announcing in large letters that he would open "a ladies and gents dry goods store" therein.

On the trial of appellant Gabriel S. Halbert, of Stapleton, N. Y., cashier of the Richmond Borough National Bank, testified as a witness in behalf of the Commonwealth. He identified the appellant as a man whom he had known in New York under the name of I. Singer,

and also identified the $96.03 check as the one deposited by appellant in the German National Bank and forwarded by that bank to the Richmond Borough National Bank, upon which it was drawn, but the payment of which was refused by the latter bank, saying that it was the form of check furnished by that bank to its customers for drawing on cash accounts. According to the further testimony of Halbert no such firm as J. Breslaur & Son, the purported drawers of the check, ever lived in Stapleton, N. Y., or had an account with the Richmond Borough National Bank. In addition to the facts furnished by this witness already mentioned he testified as follows:

"Q. I will ask you if he (Siegel) ever had a deposit in your bank (Richmond Borough National) under the name of I. Singer? A. He did. Q. When was that? A. He opened an account about November 20, 1916. Q. I will ask you what that account amounted to? A. On November 20th he opened an account for $200.00 cash; on the 24th, $20.00 cash; on November 27th he deposited a check on a Philadelphia bank for $203.00. Q. What did that whole sum total? A. $423.00. Q. I will ask you if that check on the Philadelphia bank was ever paid? A. It was not. Q. How much did your bank pay out to Mr. Siegel's credit upon his checks? A. All that was deposited to his credit except $15.32. Q. How much does that leave your bank out of pocket? A. $189.74. Q. Was that check on that Philadelphia bank a check that was given by Mr. Siegel himself, or was it a check on some other person endorsed by Mr. Siegel? A. It was a check on another party endorsed by Mr. Singer, made by Lipschitz & Sons. Q. Payable to whom? A. Payable to the order of I. Singer and endorsed by I. Singer. Q. I will ask you, Mr. Halbert, how the signature of I. Singer on the Kensington National Bank, of Philadelphia, the check, compares with the signature of I. Siegel on the Richmond Borough National Bank? A. They look alike to me. Q. I will ask you that if in your duty as a cashier of a bank you have to make comparisons of signatures of different parties and identify signatures? A. Yes, sir. Q. How much experience have you had in that duty? A. Twenty-five years. Q. I will ask you to look at those two signatures I showed you and ask you how they compare; if they were made by the same person or different persons? A. They certainly resemble each other. Q. Would you say whether they were made by one person or differ-

'ent persons? A. I should say they were made by one person.''

On cross-examination the witness testified as follows:

''Q. What recalls to your mind that you can identify him at this time? A. Because I took particular notice of him at the time; I asked him if he was in business and he told me he was, and I asked him where, and he told me where; and when that check came back from Siegel I made it my business to try to find out where he was, and I found out he had rented a store, but never taken possession, and paid something like $2.00 down on a month's rent. He gave his address at that time as 448 Jersey street, Newbrighton, Staten Island. Q. What business was it that he was supposed to be engaged in? A. A ladies' furnishing goods and sort of general store. Q. Did he open that store? A. He did not; no, sir.''

Adolph Imfeld, a deputy sheriff of Campbell county, made the arrest of appellant in Chicago on a requisition issued by the Governor of this state. Imfeld testified that after the arrest was made appellant, under writs of *hebeas corpus* made three attempts in the courts of Chicago to obtain his release and in a proceeding under one of the writs testified on oath as a ground for his release from arrest that he was never in Newport in his life, which necessitated the presence in Chicago of the cashier of the German National Bank of Newport to identify appellant as the person named in the requisition for his apprehension. Imfeld also testified that while on the train returning from Chicago with appellant to Newport he was asked by the latter not to handcuff him, saying, ''that he knew he had done wrong and wanted to know of me if there wasn't a way to square the matter with the bank.''

The evidence as a whole leaves no doubt of the appellant's guilt, if the acts charged in the indictment constitute an offense against the law of this state. By a scheme he had previously practiced with marked success upon the Richmond Borough National Bank, and which, by reason of its novelty and apparent genuineness, was calculated to deceive the most astute of bank officials, appellant succeeded by the use of the bogus checks of $96.03 and $83.24 referred to, in defrauding the German National Bank of Newport of their aggregate amount, $179.27, though only the check of $96.03 is involved in this case. The brief statement we have given of the evidence is presented only for the purpose of showing the

shrewdness and fraudulent character of the methods employed by appellant in the transaction, for the matter of his guilt was determined by his withdrawal, after the introduction of the evidence, of his plea of "not guilty," entered at the beginning of the trial, and substituting therefor the plea of "guilty"; and by the resulting conviction. But, as it is insisted for him that the trial court erred in overruling his demurrer to the indictment; and also in refusing to sustain his motion in arrest of judgments, these questions remain to be determined.

It is argued by appellant's counsel that the demurrer should have been sustained for the reasons: (1) that section 1213-a, Kentucky Statutes, under which the indictment was found, is unconstitutional because the offense it defines is the same denounced by section 1189, Kentucky Statutes, but for which it provides a wholly different penalty; (2) that section 1213-a does not apply to an endorser of a worthless check. A mere comparison of these statutes will be sufficient to refute the first contention. Section 1189 denounces the crime of forgery and counterfeiting, whether of a bank bill, note, check, draft or certificate of deposit of money in a bank, and also makes it a crime to erase or alter any such forged or altered bill, note, check, draft or certificate; and, in addition, provides a penalty for a violation of the provisions of the section. Section 1213-a is aimed at a wholly different offense, as it declares:

"That any person who with intent to defraud shall make, or draw or utter or deliver any check, draft or order for the payment of money upon any bank or other depository, knowing at the time of such making, drawing, uttering or delivery that the maker or drawer has not sufficient funds in such bank or other depository for the payment of such check, draft or order in full upon its presentation; or

"Who, after having made, uttered or delivered any check, draft or other order for the payment of money upon any bank or other depository shall withdraw or cause to be withdrawn, the money, or any part thereof to the credit of the maker of such draft, check or other order for the payment of money without leaving with such bank or other depository a sufficient sum to cover such check, draft or other order for the payment of money, shall be guilty of a misdemeanor, if the amount of such check or draft be under twenty dollars, and upon conviction thereof be fined not exceeding one hundred

dollars, or confined in the county jail not less than one day or more than thirty days, either so fined or imprisoned or both in the discretion of the court or the jury trying the case; and if the amount of such check or draft be twenty dollars or over, he shall be guilty of a felony and confined in the penitentiary for not less than one year nor more than two years, and the drawer of such check or draft shall be prosecuted in the county in which he delivers same.

"*Provided, however,* That if the person who makes, issues, utters or delivers any such check, draft or order, shall pay the same within twenty days from the time he receives actual notice, verbal or written, of the dishonor of such check, draft or order, he shall not be prosecuted under this section, and any prosecution that may have been instituted within the time above mentioned, shall, if payment of said check be made as aforesaid, be dismissed at the cost of defendant.

"The making, drawing, uttering or delivering of such check, draft or order as aforesaid shall be *prima facie* evidence of intent to defraud."

It will be observed from the language of section 1213-A that the forgery of the check, draft or order which may be drawn upon any bank or other depository, not having sufficient funds to pay it, is not an ingredient of the offense. Its meaning clearly is that one who with intent to defraud shall make or draw or utter or deliver the check, draft or order for the payment of money upon any bank or other depository, though it be not forged, knowing at the time of such making, drawing, uttering or delivery that the maker or drawer has not sufficient funds therein for the payment of such check, draft or order in full upon its presentation, makes himself amenable to the punishment provided by the section. Neither the inhibition contained in the statute nor the punishment provided for its violation, is confined to the maker or drawer of the check, draft, or order, but they apply equally to one who with intent to defraud utters or delivers by indorsement or otherwise, and thereby makes use of a check, draft or order for the payment of money, though it be made or drawn by another, knowing at the time of such making, drawing, uttering or delivery that the maker or drawer has not sufficient funds in the bank or other depository for its payment in full upon presentation.

It would seem to follow, therefore, that the language of the section embraces the endorser of such a check, draft or order provided he utters or delivers it with intention to defraud, knowing at the time that the maker or drawer had not sufficient funds in the bank or other depository upon which it was drawn for its payment in full upon presentation. The only distinction made by the section, *supra,* between the drawer of a check or draft and the endorser is in providing that the drawer, if guilty of the offense defined by the statute, shall be prosecuted in the county in which he delivers same. We infer that this provision was inserted in the section because in its absence the place or county where the act of the drawer constituting the offense took place—that is, the making or drawing of the worthless check—would, in law, fix the venue. In other words, the section in the case of the drawer seems to treat the delivery of the check as the consummation of the offense, for without such delivery the mere making or drawing of the check, followed by its non-use, would not constitute the offense; hence, the place of the delivery of the check establishes the venue of the prosecution. On the other hand, in the case of an endorser or user of a check drawn by another, his endorsement and delivery of the check would necessarily make the county of its delivery by him the place for his prosecution. His endorsement and delivery of the check would not violate the statute unless he knew at the time of so endorsing and delivering it that there was no money to the credit of the drawer in the bank or depository upon which it was drawn; and, being possessed of such knowledge, he nevertheless endorsed and delivered the check with the intention to defraud.

In our opinion the sections in question do not conflict; therefore, section 1213-a is not open to the objection made to its constitutionality, nor is it true that its provisions do not apply to the endorser of a check of the character described therein. Hence, there was no error in the trial court's action in overruling the demurrer to the indictment.

We think it equally clear that the refusal of the court to sustain appellant's motion in arrest of judgment was not error. Criminal Code, section 276, provides that the only ground upon which a judgment shall be arrested is that the facts stated in the indictment do not constitute a public offense within the jurisdiction of the court. If correct in our conclusion that the indictment was not

subject to demurrer, it cannot be said that the facts stated therein do not constitute a public offense within the jurisdiction of the court.

Appellant's complaint of such of the evidence as shows the commission by him upon the Richmond Borough National Bank of a similar fraud to that charged in this case cannot be sustained, as such evidence was competent to show both motive and guilty knowledge upon his part in the commission of the offense here charged. Day v. Commonwealth, 173 Ky. 269; Morse v. Commonwealth, 129 Ky. 294; Commonwealth v. Brand, 166 Ky. 793; Graham v. Commonwealth, 174 Ky. 645; Barnes v. Commonwealth, 101 Ky. 556. Moreover, we think the plea of guilty interposed by the appellant after the introduction of the evidence referred to estops him from urging the complaint now made of it.

The record furnishes no reason for reversing the judgment of conviction. Hence, it must be and is affirmed.