[No. 11381-0-I. Division One. July 16, 1984.]

LARRY MCINTYRE, *Appellant,* v. WHATCOM COUNTY, *Respondent.*

*Hendricks & Schillberg, Robert E. Schillberg,* and *George McIntosh,* for appellant.

*Brett, Brinn, Daugert & Erickson* and *Dean Brett,* for respondent.

ANDERSEN, J.—

### FACTS OF CASE

This appeal challenges the constitutionality of a part of Whatcom County's new home rule charter.

The plaintiff in this action, Larry McIntyre, was one of the three elected county commissioners under Whatcom County's former county commission form of government. In

November 1977, 21 freeholders were elected by the people of Whatcom County to prepare and propose a home rule charter for the government of that county. This was done pursuant to express authority granted in the constitution of this state. Const. art. 11, § 4 (amend. 21).[1]

The elected freeholders then prepared and proposed a charter providing for separation of legislative and administrative powers, and establishing initiative and referendum rights in the people. At a special election held on November 7, 1978, the voters of the county adopted the proposed charter as the new Whatcom County Home Rule Charter. It became effective on May 1, 1979.

The charter created a 7–member, part–time county council and a full–time elected county executive. Two of the transitional provisions of the new charter provided in pertinent part as follows:

Section 10.30—Commencement of Terms of Office
County Commissioners elected at the general election in 1976 in Districts One and Two may serve as county council members Position "A" of their respective districts from the effective date of this Charter until their successors are elected at the general election of 1981, have qualified and have commenced their terms of office. The County Commissioner elected in the general election of 1978 for District Three may serve as county council member, Position "B", from the effective date of this charter until his successor has been elected at the general election of 1983, has qualified and has commenced his

---

[1]Insofar as here significant, Const. art. 11, § 4 (amend. 21) provides:

Any county may frame a "Home Rule" charter for its own government subject to the Constitution and laws of this state, . . . Such proposed charter shall be submitted to the qualified electors of said county, and if a majority of such qualified electors voting thereon ratify the same, it shall become the charter of said county and shall become the organic law thereof, and supersede any existing charter, including amendments thereto, or any existing form of county government, and all special laws inconsistent with such charter. . . .

. . .

The terms of all elective officers, except the prosecuting attorney, the county superintendent of schools, the judges of the superior court, and the justices of the peace, who are in office at the time of the adoption of a Home Rule Charter shall terminate as provided in the charter.

term of office.

Section 10.40—Compensation—County Commissioners

A commissioner elected in 1976 shall receive the same salary serving as a county council member from the effective date of this Charter until January 13, 1981 as he would have received notwithstanding the passage of this Charter and the same benefits as all other part–time council members. If that Commissioner files for the office of County Executive he will receive salary and benefits the same as a part–time council member as provided for in this Charter effective May 1, 1979. The Commissioner elected in 1978 shall be compensated as a county council member as provided in Section 2.20 and 10.41 effective May 1, 1979. Commissioners appointed after November 7, 1978 to fill out the unexpired terms of commissioners elected in 1976 or 1978 shall receive compensation as county council members as provided in this Charter after the effective date of this Charter.

Thus the charter provided the three incumbent county commissioners with automatic seats on the new part–time and lesser paid county council for the balance of the full term (4 years) to which they were originally elected as county commissioners and continued their higher county commissioner's salary for the balance of those terms. The charter also provided, however, that if any of the three chose to run for the new and yet higher paying office of county executive, and the effort failed, then while that person would still retain the guaranteed position on the part–time county council, he would be paid no more than the other part–time county council members.

Seven or eight people, plaintiff included, ran for the new county executive position. The plaintiff lost in the primary. He subsequently filed this action for damages and a declaratory judgment seeking: (1) entry of a judgment declaring unconstitutional that part of the Whatcom County Home Rule Charter § 10.40 (set out above) which cut his salary because he ran for county executive; and (2) reinstatement of his full county commissioner's salary from the May 1, 1979 effective date of the home rule charter through the end of his term as a member of the council which ended in

January 1982.

The case was tried to the court and the relief sought by the plaintiff was denied. Findings of fact, conclusions of law and a judgment dismissing plaintiff's complaint were entered by the trial court.

Plaintiff's appeal to this court raises two principal issues.

## ISSUES

ISSUE ONE. Did section 10.40 of the Home Rule Charter of Whatcom County, under which the plaintiff's salary was reduced, violate the constitutional prohibition against decreasing a county officer's salary during his term of office?

ISSUE TWO. Did section 10.40 of the Home Rule Charter of Whatcom County, under which the plaintiff's salary was reduced, deny him his constitutional right to equal protection of the laws?

## DECISION

ISSUE ONE.

CONCLUSION. Since the office of county commissioner was abolished by adoption of the Home Rule Charter for Whatcom County, the reduction of the plaintiff's salary was not constitutionally prohibited.

■ Our state constitution prohibits diminishing the salary of a county official after election or during his or her term of office. Const. art. 11, § 8 (amend. 57); *DeBow v. Truax,* 140 Wash. 258, 260–61, 248 P. 437 (1926). The home rule charter clause of the state constitution, however, subject to certain limitations not pertinent here, provides that "[t]he terms of all elective officers, . . . who are in office at the time of the adoption of a Home Rule Charter shall terminate as provided in the charter." Const. art. 11, § 4 (amend. 21) (footnote 1).

■ Although the plaintiff argues otherwise, it is clear that the intent of the freeholders and the voters in adopting the home rule charter was to abolish the offices and terms of office of the county commissioners as of the May 1, 1979 effective date of the charter. As the Whatcom County

Board of Freeholders wrote in their preface to their published booklet containing their proposed charter:

TO THE PEOPLE OF WHATCOM COUNTY:

. . .

The final Home Rule Charter proposal makes two basic changes in our county form of government; namely, it separates the legislative and administrative functions of government by providing a nonpartisan seven member, part–time county council and a full–time, elected administrator (County Executive) *to replace the present three commissioner form of government* and the Charter provides the right of initiative and referendum to the citizens of Whatcom County. The Charter maintains the Assessor, Auditor, Treasurer and Sheriff as partisan elected officials as at the present time.

Other changes are relatively minor but the major difference is adopting "Home Rule" itself. The Charter is a county constitution designed to give the control of county affairs to the people of the county rather than requiring legislation from Olympia.

(Italics ours.) Although such prefatory statement of purpose by the freeholders is without operative force in itself, it nevertheless serves as an important guide in understanding the intended effect of the operative sections of the charter. *See Hartman v. State Game Comm'n*, 85 Wn.2d 176, 179, 532 P.2d 614 (1975).

Article 10 of the new charter, entitled "Transitional Provisions", contains a comprehensive plan whereby the three incumbent county commissioners "may serve" the balance of the terms for which they were originally elected, and at their original commissioners' salaries, if they chose to so remain. See Charter §§ 10.30 and 10.40, set forth above. Charter § 10.50 rounded out this transitional plan by providing that every other elected official whose office was abolished or made appointive by the charter would be similarly continued on in county employment at the same rate of compensation through the date their original term of office would otherwise have expired. Thus, looking at the context of the charter as a whole, it is clear that the intent of the operative sections of the charter was to do precisely

what the freeholders said in their above quoted prefatory statement, *i.e.,* replace one form of county government with another effective May 1, 1979. This it did. *See Hartman,* at 179; *Amburn v. Daly,* 81 Wn.2d 241, 245–46, 501 P.2d 178 (1972).

ISSUE TWO.

CONCLUSION. The compensation provision of Charter § 10.40 is rationally related to Whatcom County's legitimate interest in preserving the continuity and integrity of its government, therefore, it is not invalid on equal protection grounds.

The gist of plaintiff's equal protection claim[2] is that because he unsuccessfully ran for county executive, Charter § 10.40 as applied to him resulted in his being paid some $60,000 less for the balance of his term on the new county council than his fellow former county commissioner who had not run for county executive. See Charter § 10.40 set forth above.

In dealing with such a claim, we must first determine which standard of review to apply, the "rational basis" test or the more rigid "compelling interest" test. *See Sorenson v. Bellingham,* 80 Wn.2d 547, 496 P.2d 512 (1972); *Swanson v. Kramer,* 82 Wn.2d 511, 512 P.2d 721 (1973); *Lawrence v. Issaquah,* 84 Wn.2d 146, 524 P.2d 1347 (1974); *Bullock v. Carter,* 405 U.S. 134, 31 L. Ed. 2d 92, 92 S. Ct. 849 (1972); *Wellford v. Battaglia,* 343 F. Supp. 143, 145 (D. Del. 1972), *aff'd,* 485 F.2d 1151 (3d Cir. 1973); *Kraft v.*

---

[2]The Fourteenth Amendment provides: "No state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. 14, § 1. State action exists where an enactment is of a municipal corporation, *Hsieh v. Civil Serv. Comm'n,* 79 Wn.2d 529, 532, 488 P.2d 515 (1971), such as a county, RCW 42.23.020.

Our state constitution likewise provides: "No law shall be passed granting to any citizen, class of citizens, or corporation other than municipal, privileges or immunities which upon the same terms shall not equally belong to all citizens, or corporations." Const. art. 1, § 12. Both state and federal provisions are "substantially identical in their mandate to the state", *State v. Perrigoue,* 81 Wn.2d 640, 641, 503 P.2d 1063 (1972), and in the absence of any contrary authority will be so discussed here.

*Harris,* 18 Wn. App. 432, 568 P.2d 828 (1977).

 "In approaching candidate restrictions, it is essential to examine in a realistic light the extent and nature of their impact on voters." *Bullock,* 405 U.S. at 143. *See also Sorenson,* at 552–53 and *Swanson,* at 528–32 (Utter, J., dissenting). So viewed in this case, the plaintiff was not excluded from the ballot and those voters who wished to vote for him were free to do so. Going past that, however, this was a one time only application of the challenged charter provisions and was aimed at providing a fair and orderly transition from one form of county government to another rather than being aimed at any of the traditional judicial categories comprising "suspect classifications" and "fundamental interests". It follows that this is not an appropriate case for application of the more rigid "compelling interest" test. *See also Clements v. Fashing,* 457 U.S. 957, 73 L. Ed. 2d 508, 102 S. Ct. 2836, *reh'g denied,* 458 U.S. 1133, 73 L. Ed. 2d 1404, 103 S. Ct. 20 (1982); *Joyner v. Mofford,* 706 F.2d 1523 (9th Cir.), *cert. denied,* 104 S. Ct. 509 (1983).

In *Kraft,* we summarized the "rational basis" test (also referred to in this State as the "legitimate state interest" test) as follows:

> In applying its "legitimate state interest" test, the Washington Supreme Court has adopted the standards of review applicable to the "rational basis" test. The presumption of validity is honored and the burden is placed upon the challenger to establish that "the law has no permissible objective or, given a valid objective, that there is no 'rational basis' for the means selected."

(Citation omitted.) *Kraft,* at 435.

 The plaintiff in this case failed to meet the burden imposed upon him by the "rational basis" test. The charter's objective here was certainly a permissible one, predicated as it was on express constitutional authority. Const. art. 11, § 4 (amend. 21) (footnote 1). Nor can it be said that there was no "rational basis" for the means selected. In that connection, the trial court found as fol-

lows:

As the Charter was adopted [by] a vote of the people, it is impossible to ascertain the reasons why each individual person voted for the Charter; however, there are several reasons which may reasonably be conceived to justify both separately and cumulatively the provision which adjusted the salary of any County Commissioner who chose to run for the County Executive position.

(a) The provision provided economic incentive for former Commissioners to stay on the County Council to provide continuity and a core of experience on the Council.

(b) Since the former County Commissioners had run for that office with the expectation of full–time salaries, it was deemed equitable to honor those expectations so long as their job was being changed by the voters in a manner over which the former Commissioners had no control. However, if one of the Commissioners knowingly abandoned that expectation in the face of the Charter provision which had been passed by the voters it was no longer thought important for fairness to pay him full–time salary for part–time work.

(c) The extra compensation was justified for the full–time work the former Commissioners would do during the transition period between adoption of the Charter and election of the officers in the new government. The former Commissioners were not prohibited from running for other office, rather, if they chose to occupy that transitional period by running for County Executive then pay would be adjusted commensurate with their part–time commitment to the office.

Finding of fact 10. The trial court concluded in this regard:

The goals of keeping experienced members on the Council, fairly honoring expectations which had not been voluntarily forsaken, and of paying people extra for extra service are legitimate government goals.

Conclusion of law 3.

We agree with the trial court's conclusion that section 10.40 of the Home Rule Charter for Whatcom County is rationally related to the County's legitimate interest in the continuity and integrity of its fledgling home rule government. *See Clements.*

The fact that plaintiff's brother commissioner may have been paid some $60,000 more than the plaintiff was does not under the circumstances of this case establish an unconstitutional denial of equal protection. *See, e.g., Kavanagh v. Brown*, 206 F. Supp. 479 (E.D. Mich.), *aff'd mem.*, 371 U.S. 35, 9 L. Ed. 2d 112, 83 S. Ct. 143 (1962). As the trial court's oral decision succinctly expressed it:

> This man ran. He had a choice. He didn't have to run for county executive unless he wanted to. He is subject to the rules of the charter in that regard, and the rules are clear to me. There is no ambiguity. It says in effect if you run for executive, that means if you lose you are one of the boys, as far as salary is concerned. You will take part–time salary for part–time work and you have decided to forego the benefits that we gave you when we agreed to pay you full pay for the part–time job.

To the extent that plaintiff's remaining contentions are not encompassed by our rulings herein, we deem them nonmeritorious.

Affirmed.

WILLIAMS and CALLOW, JJ., concur.